JOANNA SHERIDAN (CABN 260090)
J.P. Sheridan Law
601 Montgomery Street, Suite 850
San Francisco, CA 94111
Telephone: (415) 347-2700
Facsimile: (415) 347-2701
Email: joanna@jpsheridanlaw.com

Counsel for Defendant, Wilmer Omar Arteaga Erazo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILMER OMAR ARTEAGA ERAZO,<br><br>Defendant. | CASE NO. 25-CR-00387-001 MMC<br><br>SENTENCING MEMORANDUM OF DEFENDANT ARTEAGA ERAZO AND MOTION FOR DOWNWARD VARIANCE |

## INTRODUCTION

Mr. Arteaga Erazo is a devoted father and son who came to the United States seeking resources to support his family. When his work as a barber dwindled and his son was diagnosed with a heart murmur requiring expensive medical intervention, Mr. Artega Erazo made the fateful choice to return to the streets to make money. Although he committed this offense to help his family, now he is leaving them without support for at least 5 years. He feels profound regret and sadness for the pain and suffering he has caused. While he doesn't know how his family will make it while he is incarcerated, one thing is crystal clear: a 60-month sentence is greater than necessary to deter him from ever committing another crime or returning to the United States.

## GUIDELINES CALCULATION

The PSR calculates Mr. Arteaga Erazo's Total Offense Level to be 27. This is consistent with the calculation in the parties' plea agreement. There is one difference between the parties' guideline

calculation and the calculation in the PSR, regarding what level of enhancement to apply to the second group pursuant to U.S.S.G § 2L1.2(b)(3)(C). *See* PSR ¶¶ 4, 39. The parties' calculation included only a 4-level enhancement, whereas the PSR uses a 6-level enhancement. The difference does not change the Total Offense Level of 27.

The PSR calculates Mr. Arteaga Erazo's criminal history category as II. PSR ¶ 57. At a Total Offense level of 27 and CH category II, the guidelines call for a sentence of 78-97 months.

**SENTENCING RECOMMENDATIONS**

The PSR recommends a custodial sentence of 60 months. Mr. Arteaga Erazo joins in the sentencing recommendation of the Probation Office. The government and defendant have entered into a written agreement pursuant to Rule 11(c)(1)(B), whereby the government agreed to recommend a sentence within the guideline range for offense level 25 and Mr. Arteaga Erazo remained free to move the Court for a downward variance. For the reasons outlined below, Mr. Arteaga Erazo now moves this court to impose the maximum downward variance to a sentence of 60 months imprisonment.

**ARGUMENT**

The duty of a federal sentencing court is to impose a sentence that is "sufficient but not grater than necessary, to comply with" the purposes of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Those purposes are (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2). In determining whether a sentence is "sufficient, but not greater than necessary" to accomplish these purposes, courts must consider certain factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant," §3553(a)(1); the guidelines sentencing range and any applicable Sentencing Commission policy statements, §3553(a)(4), (5); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," §3553(a)(6).

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines (U.S.S.G.) are "effectively advisory" and no longer mandatory. *Id.,* at 245. "In

the wake of *Booker*, federal sentencing is now governed by 18 U.S.C. § 3553(a)." *United States v. Menyweather*, 431 F.3d 692, 695 (9th Cir. 2005). Two subsequent Supreme Court decisions, *Spears v. United States*, 555 U.S. 261 (2009) and *Nelson v. United States*, 555 U.S. 350 (2009) reiterated that the guidelines are now truly advisory and that there is no presumption at the district court level that a guidelines sentence is inherently reasonable.

Accordingly, Mr. Arteaga Erazo addresses the following section 3553(a) factors for the Court's consideration in its determination of the appropriate sentence in his case.

**A. The Offense Conduct**

Over the course of three months Mr. Arteaga Erazo was arrested twice for possession and sales of controlled substances. On August 4, 2025, he was stopped on the Bay Bridge transporting approximately 128 grams of fentanyl and 77.8 grams of methamphetamine. This conduct is charged in Counts 1 and 2. On November 2, 2025 he was arrested in San Francisco after the police witnessed him engage in a hand-to-hand sale. He had approximately 80 grams of fentanyl and 14 grams of methamphetamine in his backpack. This conduct is charged in Counts 2 and 4. Mr. Arteaga Erazo had been twice deported before and returned to the United States without official authorization. This conduct is charged in Count 5.

**B. Mr. Arteaga Erazo's background**

Wilmer Arteaga Erazo is 34 years old and is a citizen of Honduras. He grew up in a small town where financial resources were limited. His father left home for work in the United States when he was 2 years old. For several years thereafter his father would call and send financial support back to the family, but when Mr. Arteaga Erazo was 8-10 years old his father stopped calling. Although he didn't understand the circumstances until much later, his father had abandoned his family in Honduras for a new wife in the United States. PSR ¶ 65 - 66.

By age 12, Mr. Arteaga Erazo began noticing signs of severe depression in his mother. She would not eat, couldn't sleep and started taking medications. She never spoke ill of his father, so Mr. Arteaga Erazo couldn't understand what had happened to her. His basic needs were often not met because his mother could not care for herself or her children. As the only male in the household, Mr. Arteaga Erazo felt responsible to start working so he could pay for his mother's medication and put food on the table for his two younger sisters. He would grow corn and beans at local farms and receive a share of the harvest.

He also learned how to cut hair to make extra money. This was a confusing and traumatic time for him, forced to navigate the adult world as a young teenager. *See* PSR ¶ 66 - 67.

Mr. Arteaga Erazo has come to the United States three times. He first arrived at age 18, came back around age 27, and returned when he was 32 years old. PSR ¶ 68. Each time he came seeking economic opportunities to provide for his family. When he came back most recently in his early 30's, Mr. Arteaga Erazo was responsible not only to support his mother and 17 year old daughter Madelin, but also his parter Seidy Vleasquez and their six-year-old son Archangel. He worked as a barber, renting a chair at a barber shop in Oakland for several months, then started to doing home visits to expand his business. PSR ¶ 81. He was working hard but providing enough for his family by cutting hair – often doing eight or nine house calls per day, but when the immigration raids in Los Angles rattled the Bay Area immigrant community in the summer of 2025, his clientele began drying up. PSR ¶ 29, 81. It was at this time, and for the reasons described below, that Mr. Arteaga Erazo returned to the criminal conduct captured in this case.

**C. Mr. Arteaga Erazo's reasons for committing these crimes**

In the summer of 2025, a repressive political climate drove Mr. Arteaga Erazo's clients away from services such as haircuts. Just as his income dwindled, his family's financial need increased for several reasons. In addition to the ongoing cost of his mother's depression medications, Mr. Arteaga Erazo's son was diagnosed with a heart murmur requiring ongoing medical evaluations, his daughter became pregnant with a man who didn't stay to help her care for the child, and a close family friend's child was diagnosed with leukemia. PSR ¶ 27-29. Mr. Arteaga Erazo buckled under the pressure of these financial needs and went back to the streets to provide essential medical services and support for his family. He had no idea that the drugs he was selling this time – fentanyl and methamphetamine – could subject him to a mandatory minimum sentence of 5 years. His longest prior term of incarceration was 18 months, prior to being removed when he was about 25 years old. *See* PSR ¶ 68.

**D. Mr. Arteaga Erazo's future goals**

Mr. Arteaga Erazo's family are a source of support and a bright spot in his life. Although the financial burden of providing for them has influenced his choices in a negative way, he loves his mother, sisters, partner and two kids. He has talked to his son every day of his federal pretrial detention.

The immediate future is hard to face, because his family will have to struggle for many years to

come before he can return home. They remain supportive of him, but he knows that there is much they ae not telling him to avoid making him worry. PSR ¶ 69. It will be hard, but Mr. Arteaga Erazo will eventually be reunited with his family. He never intends to return to the United States. PSR ¶ 70.

Mr. Arteaga Erazo has been working on his future goals while in pretrial detention. He completed rehabilitation courses including 12 weeks of Drug Rehabilitation, 40 Milestone Performance Credits for ongoing participation in rehabilitation coursework and 12 weeks of “Living with a Purpose” classes. His plan upon returning to Honduras is to open a barbershop. PSR ¶ 71.

**CONCLUSION**

Mr. Arteaga Erazo has accepted responsibility and is facing the consequences of his actions. He must live with the harm he has caused to the community and to the ones he loves. A 60-month sentence is more than necessary to permanently deter him from returning to the United States and is a just punishment for the harms he caused. For these reasons, we respectfully recommend that the Court impose the mandatory minimum sentence of 60 months in custody.

DATED: September 30, 2026

/s/
JOANNA P. SHERIDAN
Counsel for Wilmer Omar Arteaga Erazo